**CATE et al. v. BEASLEY et al.**

No. 25463.   Jan. 14, 1936.

Pliny S. Frye, W. C. Wood, and R. W. Stoutz, for plaintiffs in error.

James A. Veasey, L. G. Owen, Forrest M. Darrough, and R. J. Roberts, for defendant in error Carter Oil Company.

Charles R. Freeman, for defendants in error Beasley et al.

PHELPS, J.   John Wadsworth was enrolled as a Seminole Indian. He selected his allotment on October 18, 1904. He died on August 3, 1907. Therefore he died after selecting his allotment and prior to statehood, Oklahoma having been admitted into the Union on November 16, 1907.

Surviving him were his mother and some brothers and sisters, enrolled as Seminoles, and a wife and three children, enrolled as Creeks. The question for consideration is whether his estate was inherited by the aforesaid Seminole relatives or by the Creek wife and children.

This action to quiet title was instituted by the Seminole relatives and their heirs against the surviving Creek wife and children of said allottee. The petition alleged that plaintiffs derived their interest from the fact that the allottee, John Wadsworth, died seized of the land and that on his death it was inherited by his Seminole mother, and then on her death by her children (brothers and sisters of allottee), to the exclusion of the defendant widow and children of the allottee, by virtue of the provisions of the second section of the agreement with the Seminole Tribe of Indians, dated October 7, 1899 (Act June 2, 1900, 31 Stat. L. 250), reading as follows:

"If any member of the Seminole Tribe of Indians shall die after the thirty-first day of December, eighteen hundred and ninety-nine, the lands, money and other property to which he would be entitled if living, shall descend to his heirs who are Seminole citizens, according to the laws of descent and distribution of the state of Arkansas, and be allotted and distributed to them accordingly; Provided, that in all cases where such property would descend to the parents under said laws the same shall first go to the mother instead of the father, and then to the brothers and sisters, and their heirs instead of the father."

The trial court sustained demurrers to the petition, and plaintiffs appeal.

For 25 years it has been the settled rule of law in this state, in reliance upon which

the stability and dependability of titles has depended, that the allotted land of a Seminole Indian, who died (1) after selecting his allotment, and (2) before statehood, descended to his heirs, in accordance with the Arkansas laws of descent and distribution, (Crawford & Moses' Dig. sec. 3471 et seq.) without regard to the above limitation to tribal citizens. Such is admitted by plaintiffs in error, but they contend that those decisions are incorrect and that they are not in harmony with certain decisions of the Supreme Court of the United States.

There is some merit in the assertion of plaintiffs in error that the first pronouncement of that rule, in Bruner v. Sanders, 26 Okla. 673, 110 P. 730, decided in the year 1910, is dictum. Nevertheless, if it was dictum, it was repeatedly followed by subsequent decisions of this court where-in it emerged from the realm of dictum into the point actually decided. Those cases are Heliker-Jarvis Seminole Co. v. Lincoln, 33 Okla. 425, 126 P. 723; Thorn v. Cone, 47 Okla. 781, 150 P. 701; Rentie v. Rentie, 70 Okla. 103, 172 P. 1083; Dickinson v. Abb 73 Okla. 322, 176 P. 523; Lasiter v. Ferguson, 79 Okla. 200, 192 P. 197, and Stewart v. Billington, 122 Okla. 9, 250 P. 84. And that rule of law was considered and approved in the following text-books: Bledsoe's Indian Land Laws (2d Ed.) p. 273 and Oklahoma Indian Land Laws, by Mills (2d Ed.) p. 257.

There is no contention advanced herein by plaintiffs in error but what was thoroughly considered in the foregoing cases and denied therein. In particular see Dickinson v. Abb, Lasiter v. Ferguson, and Stewart v. Billington, all supra.

We deem it unnecessary to again discuss the reasons for those decisions, since it is not denied that the controlling facts in the present case are identical with the facts in those cases, especially Stewart v. Billington, which see. Though the court in former years did change its pronouncement on points related to the point at issue here, as complained of so vigorously by plaintiffs in error, this court has never deviated from the rule of law involved in the instant case. We find no reason why we should do so at this late date. The soundness of the original decision and all of the cases subsequently following it on this particular point is

in our opinion apparent, but whether the abstract principle was entirely correct is not so important as is the fact that it has become a settled and long standing rule of property in this state, upon which lawyers and laymen alike have depended. As stated in Lasiter v. Ferguson, supra:

"These cases being accepted as the settled law in this jurisdiction for so many years, it is impossible to estimate the great number of real estate transactions that have taken place in the Seminole Nation on the faith of their correctness. In these circumstances it is the duty of this court on the principle of stare decisis, to adhere to such decisions, although the court may be of the belief, which is not the case, that such decisions are not sound, for when parties have acted upon decisions as settled law, and rights have been vested thereunder, their inherent correctness or incorrectness in the abstract are of less importance than that the rule of property so established should be constant and invariable."

With great earnestness the plaintiffs in error contend that the federal Supreme Court has held otherwise in cases involving Creek Indian titles. But the following language from Reynolds v. Fewell, 236 U. S. 58, 59 L. Ed. 465. should clarify that point:

"Uncertainty and ambiguity in the Creek tribal laws of descent and distribution will not justify the federal Supreme Court in disturbing a local rule of property established by repeated decisions that an intermarried noncitizen may inherit from his deceased intestate citizen wife or child. * * * This decision as to the right of intermarried noncitizens to inherit has been repeatedly followed and has become a rule of property which, recognizing the importance of the security of titles, we should not disturb unless it is clearly wrong."

The federal question involved in this case has only a limited operation in the state of Oklahoma, and virtually no operation elsewhere. In such cases it is the general rule of law that decisions of the state Supreme Court, if they have been consistent over a period of years, will usually not be disturbed by the federal Supreme Court. We adhere to our former decisions, as hereinbefore announced.

The judgment of the trial court sustaining the demurrers to the petition is affirmed.

McNEILL, C. J. OSBORN, V. C. J., and CORN and GIBSON. JJ. concur.